JOHN A. RUSSELL *vs.* ARVILLA S. BRYANT.

Suffolk.    March 17, 1902. — May 22, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Landlord and Tenant*, Assent to assignment.  *Practice, Civil*, Exceptions.  *Equity Jurisdiction*, Fraud.  *Waiver*.

In a suit in equity founded on an alleged false and fraudulent representation of the defendant, that he would procure the consent of his lessor to an assignment of his lease to the plaintiff, a letter from the lessor to the defendant contained the following : " In regard to your selling out the lease, etc., I hardly know what to say.   I think that a party who could not pay you when purchasing your furniture would hardly be a good tenant for me.   I hope that you will decide to remain for a year.   If you should sell out I should expect that it would be to a good, reliable party."   The defendant excepted to the finding of a master that, the letter contained " no positive promise to accept even a responsible tenant."   *Held*, that the finding was right; that the letter, at most, meant that the writer was considering the matter, and might consent to a transfer if the tenant was satisfactory, but was not ready to make and did not make any positive agreement to do so.  *Held, also*, that a refusal by the master to find that the plaintiff was a responsible party, would not sustain an exception, as under the above interpretation of the lessor's letter it was immaterial whether the plaintiff was responsible.

In a suit in equity for the cancellation of a mortgage of furniture and carpets in a boarding and lodging house, on the ground that the mortgage was given to pay a balance due for the furniture and carpets and for the good will of the defendant, the purchase having been induced by the false and fraudulent representations of the defendant that he would procure the consent in writing of his lessor to an assignment of his lease to the plaintiff, it appeared, that the defendant failed to procure such consent, and the defendant's lessor brought an ejectment suit against the plaintiff, and that thereafter the plaintiff applied to the defendant for leave to remove the mortgaged property from the premises and the defendant consented to such removal.   The mortgage contained a clause prohibiting removal of the property without the consent of the mortgagee.  *Held*, that it could not be said, as matter of law, that the action of the plaintiff, in applying for the defendant's consent to the removal, constituted a ratification of the purchase or a waiver of the false and fraudulent representations.  *It further appeared*, in the same suit, that the defendant was notified to take upon himself the defence of the ejectment suit but did not do so, and that the owner of the house paid the plaintiff a sum of money to secure his removal by a certain day.   It did not appear that this was not before final judgment could have been obtained and execution issued, and it did not appear that there was any good defence to the ejectment suit.   The defendant contended, that the plaintiff had yielded possession for a valuable consideration.  *Held*, that as the plaintiff ultimately would have been obliged to vacate, he was not to be prejudiced because he made the best terms he could.

BILL IN EQUITY, filed July 1, 1901, to restrain the defendant from transferring, foreclosing or enforcing a mortgage of furniture and carpets for $562.50 given to secure that amount as the balance of the sum of $1,162.50 agreed to be paid by the plaintiff for the furniture and carpets and for the good will of the defendant at a boarding and lodging house at 23 Allston Street in Boston, alleged, as the bill is interpreted by the court, to have been purchased upon the false and fraudulent representations of the defendant, that she would assign her lease of the premises to the plaintiff with the consent in writing of Lizzie W. Burbank, the lessor, alleging that the defendant failed to procure the consent of Burbank, who took possession and ejected the plaintiff, and praying for a cancellation of the mortgage and for damages.

The letter set forth in the answer, and relied upon by the defendant, as showing that she had obtained the consent in writing of the lessor to the transfer of the lease, was as follows:

" The Nevada. New York, March 4th. Dear Mrs. Bryant, — Enclosed please find receipt for rent for March. Many thanks for the same. In regard to your selling out the lease, etc., I hardly know what to say. I think that a party who could not pay you when purchasing your furniture would hardly be a good tenant for me. I hope that you will decide to remain for a year. If you should sell out I should expect that it would be to a good, reliable party. I have reduced the rent to you and I do not retain (by the altered lease) the privilege of selling my house, if I had a good offer for it. So you see that I must have a good tenant in your place. I did not reply to Mr. Chisholm as I wanted to hear more fully from you first. Please let me know what you decide in regard to signing the leases and remaining a year. Yours sincerely, Lizzie W. Burbank."

The case was heard in the Superior Court upon a master's report and exceptions thereto. That court made a decree overruling the exceptions to the master's report, and granting the prayers of the bill, ordering, that the defendant forthwith discharge to the plaintiff the mortgage for $562.50, and surrender the mortgage note and further pay to the plaintiff the sum of $77, with costs. The defendant appealed.

*S. H. Tyng,* for the defendant.

*J. F. Neal,* for the plaintiff.

MORTON, J.   This is a bill to enjoin the defendant from transferring, foreclosing or collecting a mortgage given to her by the plaintiff on certain furniture and carpets which, with the good will of a boarding and lodging house, the plaintiff was induced to purchase from the defendant, by means of certain alleged false and fraudulent representations made by her to him.   There is also a prayer that the plaintiff's damages may be determined, and the defendant ordered to pay the same, and that, in default thereof, the mortgage may be cancelled and reduced by the amount so determined to be due the plaintiff.

The principal allegation in the bill, in regard to the character of the representations, describes them as false but not as fraudulent.   And there is no allegation that the defendant knew them to be false.   But later in the bill the representations relied on are referred to more than once as false and fraudulent, and it seems to us that the issue presented was that of a sale and purchase induced by false and fraudulent representations, and that it must have been so understood by the parties.   The case was sent to a master.   He does not find in terms that the representations were false or fraudulent.   But he finds that the plaintiff is entitled to relief on all the evidence in the case, and that the defendant made the representations relied on and that they were material and induced the plaintiff to make the purchase.   Taking the report in connection with the bill we think that the fair import of the master's findings is that the representations were found by him to be false and fraudulent.

The defendant took exceptions to the master's report.   They were overruled and the master's report confirmed and a final decree entered for the plaintiff.   The defendant appealed.

The first exception was to a finding by the master that a letter from the lessor to the defendant, on which the defendant relied to show that she had the written consent of the lessor to the transfer of the lease, contained " no positive promise to accept even a responsible· tenant."   The ground of the exception is that the master was not authorized by the rule to pass on any question of law.   The interlocutory decree referring the case to a master directs that " the usual order of reference " shall issue. What that is we are not informed nor what the terms of the order in fact were.   But the ruling can have done the defendant

no harm, because we think that it was plainly right. The most that can be said of the letter, it seems to us, is that the writer was considering the matter, and might consent to a transfer if the tenant was satisfactory, but was not ready to make and did not make any positive agreement to do so.

The next exception is to the refusal of the master to find that the plaintiff was a responsible party. If there was no promise on the part of the lessor to consent to an assignment of the lease, it made no difference whether the plaintiff was responsible or not. It was an immaterial matter. If it was material we do not see how it can be said that the refusal of the master to find that he was responsible was clearly erroneous.

The last exception is to the finding of the master that the plaintiff was entitled to relief, and to a discharge of the mortgage by way of damages. It is sufficient to say, we think, that we discover no error in the finding. It has been argued that the damages were excessive. But there is nothing to show that there was any error as matter of law in their assessment.

At the request of the defendant the master reported certain questions of law.

1. After the lessor had refused to accept the plaintiff as a tenant, and had brought an ejectment suit against him, and after the plaintiff had seen the letter from the lessor to the defendant on which the defendant relied to establish the written consent of the lessor to a transfer of the lease, the plaintiff applied to the defendant for leave to remove the mortgaged property from the premises where it was, and the defendant consented to such removal. The defendant contends that this action on the part of the plaintiff was a ratification of the sale and a waiver of any objection that the sale was procured by false and fraudulent representations. The mortgage contained a clause prohibiting the removal without the consent of the mortgagee. There was no claim that the mortgage was not valid. To have removed the property without the consent of the mortgagee would have been a breach of the mortgage. And the plaintiff well may have taken the course which he did for the purpose of reducing his loss as much as possible. It cannot be said as matter of law, we think, that his action constituted a ratification of the sale and a waiver of the false and fraudulent representations.

2. The defendant was notified to take upon herself the defence of the ejectment suit but did not do so. The owner of the house paid the plaintiff $100 less the costs to secure his removal by June 1. It does not appear that this was not before final judgment could have been obtained and execution issued. The defendant contends that the letter from the lessor to the defendant above referred to constituted a good defence to the ejectment suit, and that the plaintiff voluntarily yielded possession for a valuable consideration. It is not suggested that there was any other defence to the ejectment suit. The letter referred to contained no promise on the part of the lessor to transfer the lease, and therefore would not have constituted a defence either at law or in equity. The plaintiff ultimately would have been obliged to vacate, and is not to be prejudiced because he made the best terms that he could.

We think that the decree should be affirmed.

*So ordered.*